UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
'07 DEC -3 AM 9:45

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>  v.<br><br>Sergio MARTINEZ-Padilla,<br><br>   Defendant | Magistrate Docket No.<br>'07 MJ 2787<br><br>COMPLAINT FOR VIOLATION OF:<br><br>Title 8, U.S.C., Section 1326<br>Deported Alien Found in the<br>United States |

The undersigned complainant, being duly sworn, states:

On or about **December 1, 2007** within the Southern District of California, defendant, **Sergio MARTINEZ-Padilla,** an alien, who previously had been excluded, deported and removed from the United States to **Mexico**, was found in the United States, without the Attorney General or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8 United States Code, Section 1326.

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

                      _____
                      SIGNATURE OF COMPLAINANT
                      James Trombley
                      Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **3rd** DAY OF **DECEMBER, 2007**

                      _____
                      Ruben B. Brooks
                      UNITED STATES MAGISTRATE JUDGE

**CONTINUATION OF COMPLAINT:**
Sergio MARTINEZ-Padilla

## PROBABLE CAUSE STATEMENT

I declare under the penalty of perjury that the following statement is true and correct:

On December 1, 2007 Border Patrol Agents M. Payan and G. Regalado were assigned to operations in the Murrieta Border Patrol Station. On this particular day the Interstates 15 (I-15) Checkpoint was non-operational. While traveling northbound on the I-15 a red pick-up truck, was spotted traveling north on the I-15 at the old Highway 395 overpass. As the agents observed the vehicle it was noted that the driver's behavior changed from calm and talkative with the passenger to nervous and no longer wanting to move in his seat. As the agents drove along the side of the vehicle they were able to see that the driver was attempting to drive staring straight, but tracking the agents' vehicle out of the corner of his eye. The driver could not maintain the vehicle at a safe highway speed, fluctuating up and down, and had difficulty keeping it in his lane of travel. As the agents continued to follow the vehicle it was noted that the driver's grip of the steering wheel was tightening.

As the I-15 has historically been a route for smuggling illegal items, people, and illegal aliens attempting to leave the immediate border area, the agents decided to execute a vehicle stop on the I-15 at the northbound Mission on ramp. A record check was run on the license plate with no negative remarks. The time was approximately 11:15a.m. The driver later identified as the defendant **Sergio MARTINEZ-Padilla** was greeted by Agent Regalado with a formal introduction of the agent's agency and name. Agent Regalado asked the defendant if he had any identification and after digging around his vehicle for about a minute he stated that he had left the wallet at home with his identification in it.

As this has been a common tactic of illegal aliens trying to conceal their true identity and illegal status in the United States Agent Regalado asked where the defendant was from to which he replied "Menifee". Agent Regalado reworded the question to be "in what country were you born in" and the defendant replied that he was born in the state of "Oaxaca, Mexico". Agent Regalado then asked if he had any documents that would allow him to be in or remain in the United States legally to which the defendant replied "I am a citizen". Agent Regalado asked how he had become a citizen. The defendant had a hard time answering, but finally replied "naturalization". As the defendant had no identification a name and date of birth was requested from the defendant and he gave "Ricardo MARTINEZ-Padilla. 1964, April 11th."

It was noted by Agent Regalado that the defendant had a difficult time remembering his name and especially his date of birth. During this questioning the defendant became visibly nervous with his fingers beginning to tremble. As Agent Regalado did not believe that the defendant was being truthful a record check was run. At this time Agent A. Gonzalez appeared on scene and consulted with Agent Regalado. After speaking with Agent Regalado, Agent Gonzalez asked if the defendant would mind going to the I-15 Checkpoint to verify his identity via fingerprints, and the defendant consented to this idea. While waiting for the record check Agent Regalado decided that a proper confirmation via fingerprints would be the best method of confirming his identity and claim to U.S. Citizenship.

While taking the defendant out of the vehicle what appeared to be a wallet was seen in his jacket that he was trying to hide. As the defendant had previously denied having a wallet Agent Regalado asked the other passenger of the vehicle if it was his. The passenger stated that it was a wallet but that it belonged to the defendant. In the wallet several identifications were found with different names. The defendant was then confronted with the wallet and the identifications. The defendant once again was asked to state his citizenship. The defendant recanted his claim to U.S. Citizenship and stated that he was a citizen of Mexico and that he was illegally in the U.S. The defendant was taken into DHS custody and transported to the I-15 checkpoint. The passenger was released as he was a Legal Resident of the United States.

Routine record checks of the defendant revealed a criminal and immigration history. The defendant's record was determined by a comparison of his criminal record and the defendant's current fingerprint card. Official immigration records of the Department of Homeland Security revealed the defendant was previously deported to **Mexico** on **January 29, 2001** through **El Paso, Texas**. These same records show that the defendant has not applied for permission from the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security, to return to the United States after being removed.

Executed on December 2, 2007 at 11:00 a.m.

_____
Ismael A. Canto
Senior Patrol Agent

On the basis of the facts presented in the probable cause statement consisting of 2 page(s), I find probable cause to believe that the defendant named in this probable cause statement committed the offense on November 29, 2007 in violation of Title 8, United States Code, Section 1326.

_____         12/2/2007 at 1:00 p.m.
Ruben B. Brooks                          Date/Time
United States Magistrate Judge